Caroline Pignatelli
Sarah M. Lightdale (*pro hac vice*)
Cooley LLP
55 Hudson Yards
New York, New York 10001-2157
Phone: (212) 479-6000
Fax: (212) 479-6275
Email:  cpignatelli@cooley.com
          slightdale@cooley.com

Koji F. Fukumura (*pro hac vice*)
Cooley LLP
10265 Science Center Drive
San Diego, California 92121-1117
Phone: (858) 550-6000
Fax: (858) 550-6420
Email: kfukumura@cooley.com

*Attorney for Defendants*
*Outlook Therapeutics, Inc., C. Russell Trenary III,*
*and Lawrence A. Kenyon*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE OUTLOOK THERAPEUTICS, INC. SECURITIES LITIGATION<br><br>_____<br><br>THIS DOCUMENT RELATES TO: | Case No. 2:23-cv-21862-MCA-CLW<br><br>CLASS ACTION<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>**Date: November 4, 2024**<br>**Judge: Hon. Madeline C. Arleo**<br>**Ctrm: MLK 4A** |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................................... 1

II.     PLAINTIFFS FAIL TO ADEQUATELY PLEAD FALSITY........................................... 1

III.    PLAINTIFFS FAIL TO ESTABLISH A STRONG INFERENCE OF SCIENTER. ........ 7

IV.     PLAINTIFFS FAIL TO ADEQUATELY PLEAD LOSS CAUSATION. ...................... 11

V.      CONCLUSION.......................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Able Laby's Sec. Litig.*,
    2008 WL 1967509 (D.N.J. Mar. 24, 2008)............................................................3, 4

*In re Amarin Corp. PLC Sec. Litig.*,
    2016 WL 1644623 (D.N.J. Apr. 26, 2016) ...................................................................6

*Bauer v. Eagle Pharms., Inc.*,
    2017 WL 2213147 (D.N.J. May 19, 2017) ...................................................................7

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004)..........................................................................................3

*Chan v. New Oriental Educ. & Tech. Grp. Inc.*,
    2019 WL 2865452 (D.N.J. July 3, 2019)....................................................................11

*In re Cryolife, Inc.*,
    2003 WL 24015055 (N.D. Ga. May 27, 2003).............................................................3

*In re Discovery Labs. Sec. Litig.*,
    2006 WL 3227767 (E.D. Pa. Nov. 1, 2006) ...................................................... *passim*

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005)....................................................................................................11

*In re Dynavax Sec. Litig.*,
    2018 WL 2554472 (N.D. Cal. June 4, 2018) ...............................................................4

*In re Elecs. for Imaging, Inc. Sec. Litig.*,
    2019 WL 397981 (D.N.J. Jan. 31, 2019) ...................................................................11

*Facebook, Inc. v. Amalgamated Bank*,
    Dkt. No. 23-980 ............................................................................................................4

*In re Genzyme Corp.*,
    2012 WL 1076124 (D. Mass. Mar. 30, 2012)...............................................................4

*In re Genzyme Corp. Sec. Litig.*,
    754 F.3d 31 (1st Cir. 2014)...........................................................................................4

*Hoey v. Insmed Inc.*,
    2018 WL 902266 (D.N.J. Feb. 15, 2018) ................................................................8, 10

*Institutional Inv. Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009)........................................................................................11

ii

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Klein v. Autek Corp.*,
147 F. App'x 270 (3d Cir. 2005) ...............................................................................7

*Lewakowski v. Aquestive Therapeutics, Inc.*,
2023 WL 2496504 (D.N.J. Mar. 14, 2023)..............................................................6

*In re MannKind Sec. Actions*,
835 F. Supp. 2d 797 (C.D. Cal. 2011) .....................................................................7

*McGuire v. Dendreon Corp.*,
688 F. Supp. 2d 1239 (W.D. Wash. 2009)...............................................................3

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*,
720 F. Supp. 2d 517 (D.N.J. 2010) .....................................................................7, 11

*In re Ocugen, Inc. Sec. Litig.*,
659 F. Supp. 3d 572 (E.D. Pa. 2023), *aff'd*, 2024 WL 1209513 (3d Cir. Mar.
21, 2024) .................................................................................................................10

*In re Ocular Therapeutix, Inc. Sec. Litig.*,
2019 WL 1950399 (D. Mass. Apr. 30, 2019), *aff'd*, *Mehta v. Ocular
Therapeutix, Inc.*, 955 F.3d 194 (1st Cir. 2020) ......................................................2

*Paxton v. Provention Bio*,
2022 WL 3098236 (D.N.J. Aug. 4, 2022) ................................................................6

*Payne v. DeLuca*,
433 F. Supp. 2d 547 (W.D. Pa. 2006).....................................................................12

*Sapir v. Averback*,
2016 WL 554581 (D.N.J. Feb. 10, 2016) .............................................................8, 10

*Schaeffer v. Nabriva Therapeutics PLC*,
2020 WL 7701463 (S.D.N.Y. Apr. 28, 2020)...........................................................4

*In re Tellium Inc., Sec. Litig.*,
2005 WL 1677467 (D.N.J. June 30, 2005)...............................................................6

*In re Tellium, Inc. Sec. Litig.*,
2005 WL 2090254 (D.N.J. Aug. 26, 2005) .............................................................11

*In re Wellbutrin SR/Zyban Antitrust Litig.*,
281 F. Supp. 2d 751 (E.D. Pa. 2003) .......................................................................6

*Wilkof v. Caraco Pharm. Lab'ys, Ltd.*,
2010 WL 4184465 (E.D. Mich. Oct. 21, 2010) .......................................................3

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Williams v. Globus Med., Inc.,*
   869 F.3d 235 (3d Cir. 2017)................................................................................................4, 5

**Other Authorities**

21 C.F.R. §211.180(f) ...........................................................................................................11

88 Fed. Reg. 12374 (Feb. 27, 2023) .......................................................................................7

U.S. Dept. of Health and Human Servs. Food and Drug Admin., *Special Protocol
   Assessment, Guidance for Industry* (April 2018),
   https://www.fda.gov/media/97618/download...........................................................................5

## I.    INTRODUCTION[1]

The Opposition focuses mainly on statements about Outlook's manufacturing partners and NORSE 1–3 clinical trials, but ignores the statements' context and advances theories and arguments not supported by the Complaint's scant allegations. Still lacking are any facts, let alone particularized ones, to show that any challenged statement was false or misleading *when made*. Plaintiffs essentially offer hindsight, which "cannot form the basis for a securities fraud claim." *In re Discovery Labs. Sec. Litig.*, 2006 WL 3227767, at \*9 (E.D. Pa. Nov. 1, 2006) (finding "omission 'that is misleading *only in hindsight*'" not actionable) (emphasis in original). The Opposition also underscores that Plaintiffs have not met the PSLRA's rigorous standard for pleading a strong inference of scienter, having identified no contemporaneous facts to shed light on Defendants' state of mind when they made any of the allegedly false statements, or their purported knowledge that the FDA would withhold BLA approval. Nor can Plaintiffs contest that the only information revealed in the disclosures that caused Outlook's stock price to fall was that Outlook had encountered setbacks along the road to regulatory approval for its drug—just as Outlook had warned investors that it might—rather than any exposure of fraud.

The Complaint should be dismissed with prejudice.

## II.    PLAINTIFFS FAIL TO ADEQUATELY PLEAD FALSITY.

The Opposition repeatedly argues that "Defendants falsely touted the manufacturing facilities" of Outlook's contract manufacturers and that Defendants "falsely claimed that the three clinical trials . . . were jointly planned by the FDA and Outlook."[2] (Opp. at 1.) These arguments

---

[1] Unless otherwise defined, terms and conventions herein are those used in Defendants' Motion to Dismiss (ECF No. 42 ("Motion" or "Mot.")).

[2] The Opposition sheds little light on which of Defendants' statements Plaintiffs contend were actually false. (*See* Mot. at 12–13.) Plaintiffs declare that the Complaint is enough because it (mostly) lists dates and speakers. (Opp. at 21 n.7.) But that still leaves the Court to guess whether, for example, Plaintiffs really intend to challenge a statement that "to get FDA approval in

1

mischaracterize Defendants' statements, ignore the numerous and pointed warnings Defendants gave the market, and attempt to manufacture a duty to disclose where none existed.

***Manufacturing Partners and Requirements.*** On occasion during the class period, Defendants described Outlook's manufacturing partners, Fujifilm ("Fuji") and Ajinomoto Bio-Pharma Services ("Aji"), in positive and optimistic terms (e.g., "best-in-class," "outstanding," "excellent," "high quality").[3] (*See, e.g.*, ¶¶ 102, 109, 120, 122, 139.) Defendants also acknowledged the applicability of cGMP requirements. (*See e.g.,* ¶¶ 108, 116, 124.) Plaintiffs maintain that Defendants thereby "misrepresent[ed] cGMP compliance" or "conceal[ed] manufacturing deficiencies" of the manufacturing partners. (Opp. at 11.) This fails.

As an initial matter, Plaintiffs cannot point to any guarantees of third-party cGMP compliance, as Outlook never made any. Plaintiffs can only point to the unremarkable fact that "Defendants acknowledged understanding that compliance with cGMP was 'a required part of the . . . BLA,'" which was plainly true.[4] (Opp. at 12; *see also, e.g.*, ¶¶ 108, 119, 124.)

At bottom, Plaintiffs' theory is that any and all statements about Fuji, Aji, and/or cGMP were rendered false by the fact that Fuji and Aji received Forms 483 (i.e., interim feedback) (Mot. at 4) from the FDA in 2021 (long before Outlook submitted its BLA) and in 2023. (Opp. at 11–

---

ophthalmology for a drug that's going to be injected in someone's eye, there are standards that have to be met" (¶ 108), or that Outlook's manufacturing partners are "best-in-class." (¶¶ 156, 160.) The Court (and Defendants) should not be forced to do Plaintiffs' homework.

[3] Plaintiffs argue these statements are actionable because "each misrepresents (or conceals) specific, identifiable cGMP violations." (Opp. at 21.) They ignore that courts in this District regularly dismiss nearly identical statements as inactionable puffery. (*See* Mot. at 19.) They also fail to explain how adjectives like "excellent" amount to "factual assertions." (Opp. at 20.)

[4] Plaintiffs sensibly abandon their challenge to a statement that ONS-5010 was "designed and manufactured to be fully compliant with the FDA's criteria for ophthalmic intravitreal biologics." (¶ 158; *see also* ¶ 166); *In re Ocular Therapeutix, Inc. Sec. Litig.*, 2019 WL 1950399, at *6 (D. Mass. Apr. 30, 2019), *aff'd*, *Mehta v. Ocular Therapeutix, Inc.*, 955 F.3d 194 (1st Cir. 2020) (explaining "statement[s] of the standards that the Company is guided by in designing and operating its manufacturing processes" are not actionable").

2

15.)[5] But the case law, ***including Plaintiffs' own cases***, shows that Defendants had no duty to disclose those interim observations. "[I]n a highly regulated industry, warnings such as those [the manufacturing facility] received are a reality of doing business." *Discovery*, 2006 WL 3227767, at \*11 (omission of past Forms 483 immaterial). Plaintiffs rely on cases where companies made affirmative representations about cGMP compliance or the outcome of specific FDA inspections (Opp. at 11–12, 14), but Defendants made none here.[6] And Plaintiffs argue that the FDA's reasons for the CRL included "open observations from pre-approval manufacturing inspections" (*id.* at 14, *citing* ¶ 181), but fail to show how that fact contradicted any statements made during the class period (it did not).[7] *See Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.,* 394 F.3d 126, 156 (3d Cir. 2004) (dismissing claim where "Defendants' public statements d[id] not, in fact, contradict the purportedly false and misleading statements").

The Opposition further maintains that this Court should deem the Forms 483 material based on self-serving rhetoric that the FDA's feedback to Aji and Fuji was "devastating." (Opp. at 15.) But the Complaint contains no factual allegations indicating the FDA's observations rose to any particular level of severity or significance. Essentially, Plaintiffs ask the Court to find that they

---

[5] Plaintiffs do not dispute that the 2021 Forms 483 have zero connection to Outlook's 2022 BLA submission. (*See* Mot. at 19 n.10.) "Problems encountered in the manufacture of another company's product on different machinery in the same facility do not change the total mix of information available to a reasonable investor." *Discovery,* 2006 WL 3227767, at \*11.

[6] *Cf. In re Able Laby's Sec. Litig.*, 2008 WL 1967509, at \*3 (D.N.J. Mar. 24, 2008) (statement company was "fully compliant" with cGMPs); *Wilkof v. Caraco Pharm. Lab'ys, Ltd.*, 2010 WL 4184465, at \*2 (E.D. Mich. Oct. 21, 2010) (statement company was "substantially cGMP compliant"); *In re Cryolife, Inc.*, 2003 WL 24015055, at \*8 (N.D. Ga. May 27, 2003) (statement company was "in compliance with all FDA regulations").

[7] Plaintiffs similarly fail to explain how Trenary's statement that Outlook had "work[ed] with [Fuji and Aji] on ***mock*** inspections" and "felt [ ] like both of those companies had great capability . . . to do what needs to be done to get through FDA inspections" (¶ 175) is actionable, given he was not referring to an actual FDA inspection. *C.f. McGuire v. Dendreon Corp.*, 688 F. Supp. 2d 1239, 1241 (W.D. Wash. 2009) (stating FDA inspection was "good"). Nor does the Complaint allege that Outlook conducted any mock inspection after the Forms 483 were issued in 2023.

3

have stated a claim simply because they located Forms 483 issued to third-party manufacturers and quoted them in the Complaint. None of Plaintiffs' cases countenance this, and it cannot be squared with the undisputed principle that there is no "standalone duty to disclose" Forms 483. *Schaeffer v. Nabriva Therapeutics PLC*, 2020 WL 7701463, at *9 (S.D.N.Y. Apr. 28, 2020); *see In re Dynavax Sec. Litig.*, 2018 WL 2554472, at *7 (N.D. Cal. June 4, 2018) ("[F]ailure to disclose the subject of an ongoing dialogue with the FDA does not constitute a material omission.")[8]; *In re Genzyme Corp.*, 2012 WL 1076124, at *10 (D. Mass. Mar. 30, 2012) ("It simply cannot be that every critical comment by a regulatory agency . . . has to be seen as material for securities law reporting purposes, especially in an industry [with] constant and close supervision by the FDA.").[9]

Finally, Plaintiffs argue that Outlook's warning that its "business could be harmed" if its manufacturers were "unable to manufacture [Outlook's] product candidates at the necessary quantity or quality levels" (¶ 168) was itself actionable because "the risks had already materialized."[10] (Opp. at 19–20.) But the Opposition relies on stale case law pre-dating the Third Circuit's ruling in *Williams v. Globus Med., Inc.*, which holds that a company need not disclose that a risk materialized in the past unless it knows of a present adverse impact. 869 F.3d 235, 242 (3d Cir. 2017). And here, like *Williams*, the risk being warned of was **not** simply the risk that a

---

[8] *Cf. Able Lab'ys,* 2008 WL 1967509, at *2 (FDA sent warning letter addressed to individual defendant stating FDA's conclusions of non-compliance, and former employees reported having been instructed to falsify or conceal certain data from the agency).

[9] Plaintiffs' attempt to distinguish *Genzyme* is unavailing. In that case, defendants only discussed the Form 483 four months after it was issued, when the FDA issued a CRL and "crystalized the relevance." *In re Genzyme Corp. Sec. Litig.*, 754 F.3d 31, 42 (1st Cir. 2014). The district court found that the Form 483 had not been material, 2012 WL 1076124, at *10, and the First Circuit affirmed, 754 F.3d at 42 (holding "circumstances noted [in Form 483s] are merely observational in nature, and do not represent the FDA's final word").

[10] Plaintiffs also neglect to inform the Court that their argument echoes an outlier Ninth Circuit case that is the subject of an active appeal set to be argued before the Supreme Court of the United States this fall. *See Facebook, Inc. v. Amalgamated Bank*, Dkt. No. 23-980.

Form 483 could be issued, but rather the risk of **harm to Outlook's business**. (*See e.g.*, ¶ 127; Ex. 1 at 40 ("**Our business could be harmed** if our new contract manufacturer is unable to manufacture our product candidates at the necessary quantity or quality levels.")); *Williams*, 869 F.3d at 242 ("The risk actually warned of is the risk of adverse effects on sales—not simply the loss of independent distributors generally [and it] only materialized—triggering [the company's] duty to disclose—if sales were adversely affected at the time the risk disclosures were made."). Plaintiffs allege no fact to show that Outlook's business was harmed when Fuji or Aji received the Forms 483, or to permit an inference that Fuji or Aji were "unable to manufacture [Outlook's] product candidates" when any challenged statements were made. (Ex. 1 at 40.)

*NORSE Wet AMD Clinical Trials.* Plaintiffs also argue that Outlook's optimism about its BLA, FDA approval prospects, and NORSE 1–3 clinical trials was actionable because "the NORSE 1–3 trials were never jointly-designed with the FDA"[11] (Opp. at 2) and Outlook "never negotiated or received an SPA for the NORSE 1–3 trials." (*Id*. at 16). This fails too.

*First,* Outlook never represented that there was an SPA[12] for NORSE 1–3. (Opp. at 16, 20.) Rather, it informed investors that it "consult[ed]" and "communicat[ed]" with the FDA regarding the "three-study program." (¶ 129.) In fact, Defendants expressly told investors that, while Outlook did have an SPA in place for some of its **other** clinical trials, "we do **not** have a[] SPA in place for wet AMD [i.e., NORSE 1–3]." (Ex. 20 at 8; *see also* Ex. 1 at 1 (SPA for NORSE

---

[11] The Opposition maintains that Defendants stated that the NORSE 1-3 trials were "jointly planned" with the FDA (Opp. at 1; *see also* Opp. at 2, 3, 7, 8, 16, 17), but the word "joint" does not appear in a single one of the statements challenged in the Complaint. Nor are there any statements equating the design of NORSE 1-3 to the designs of other studies. (*See* Opp. at 16.)

[12] A SPA "indicates concurrence by the FDA with the adequacy and acceptability of specific critical elements of overall protocol design." U.S. Dept. of Health and Human Servs. Food and Drug Admin., *Special Protocol Assessment, Guidance for Industry* (April 2018) at 1, https://www.fda.gov/media/97618/download.

4–6.) At most, the Company said the FDA agreed NORSE 2 had a "legitimate" control arm (¶ 133; Ex. 9 at 1)—a far cry from an assurance that the FDA had all but guaranteed approval.

**Second**, contrary to Plaintiffs' assertion that Defendants misled investors "by representing to them that the FDA jointly planned and agreed to Outlook's pivotal trials" (Opp. at 16), Defendants repeatedly warned investors that the FDA could disagree with the "number, design, size, conduct or implementation of our clinical trials," or Outlook's "interpretation of data or significance of results." (Ex. 1 at 25–26; Ex. 33 at 24.) Plaintiffs do not dispute that Defendants issued these warnings, or challenge them. *See Lewakowski v. Aquestive Therapeutics, Inc.*, 2023 WL 2496504 at *8 (D.N.J. Mar. 14, 2023) (explaining defendants "repeatedly warned investors of the difficulties associated with obtaining FDA approval").

**Third**, while the Opposition claims that Defendants "misrepresent[ed] regulatory communications or omit[ted] adverse information material to assessing trials" (Opp. at 16), "Plaintiff[s] allege[] no facts indicating that during this period the FDA expressly communicated to Defendants that" the NORSE 1–3 design was inadequate.[13] *In re Amarin Corp. PLC Sec. Litig.*, 2016 WL 1644623, at *17 (D.N.J. Apr. 26, 2016). And "[t]he fact that reasonable people (including the FDA) may have disagreed with the Company's view [about the sufficiency of the evidence] is inapposite," and does not equate to securities fraud. *Paxton v. Prevention Bio*, 2022 WL 3098236,

---

[13] Plaintiffs do not contend that Defendants did not genuinely believe that the NORSE 1–3 trials were sufficient for FDA approval. And as further testament to Defendants' optimism, on May 18, 2024, Outlook announced that its application for ONS-5010 had been accepted by the European Commission. (*See* Ex. 22.) Plaintiffs tellingly go out of their way to exclude this information from consideration (*see* Opp. at 10 n.2), but the Court may take judicial notice of a post-class period public document where, as here, it is relevant to the alleged falsity of Defendants' statements when made. *See In re Tellium Inc., Sec. Litig.*, 2005 WL 1677467, at *4 (D.N.J. June 30, 2005) (taking notice of post-class period SEC filings where resolution of the SEC investigation was relevant to allegations in the complaint); *see also In re Wellbutrin SR/Zyban Antitrust Litig.*, 281 F. Supp. 2d 751, 755 (E.D. Pa. 2003) (judicial notice of report reflecting FDA approval status).

at *8, *12 (D.N.J. Aug. 4, 2022) (opinion statements about study results were inactionable).

*Finally*, the Opposition points to no ***contemporaneous*** allegations supporting an inference that any statements about the BLA, FDA approval prospects, or NORSE 1–3 were false or misleading when made, and instead improperly falls back on the fact that the CRL was ultimately issued. (Opp. at 18 (citing *In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 809 (C.D. Cal. 2011).) Plaintiffs' reliance on *Mannkind* is misplaced. There are no allegations here that the FDA informed any Defendant that data from NORSE 1–3 would be insufficient to support the BLA before the FDA issued the CRL. *Cf. MannKind*, 835 F. Supp. 2d at 804, 809 (FDA informed defendants, before issuing CRL, that study was insufficient for approval). The Complaint pleads quintessential fraud by hindsight, and "speculation and conjecture" do not state a claim under the PSLRA.[14] *Bauer v. Eagle Pharms., Inc.,* 2017 WL 2213147, at *7 (D.N.J. May 19, 2017).

## III.    PLAINTIFFS FAIL TO ESTABLISH A STRONG INFERENCE OF SCIENTER.

Plaintiffs ask the Court to apply a more "relaxed" pleading standard for scienter (*see* Opp. at 9), but the Third Circuit has repeatedly "reject[ed] the Plaintiffs' argument that the rigorous pleading requirements of the PSLRA should be relaxed." *Klein v. Autek Corp.*, 147 F. App'x 270, 273 (3d Cir. 2005). Rather, this Circuit imposes a "heightened" burden, requiring that scienter be pled with particularity, supported by "the who, what, when, where and how" of the events, *id.* at 274, and accompanied by "clear facts verifying plaintiff's deductions with respect to defendant's state of mind," *Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 553 (D.N.J. 2010). Plaintiffs' point that no "smoking gun" is required (*see* Opp. at 23 n.8) is a non

---

[14] Plaintiffs again point to the FDA's February 2023 draft guidance (Opp. at 16 n.4) but ignore that Outlook's BLA had already been submitted when that guidance was published (*i.e.*, the guidance could not have rendered statements misleading before it existed). *See Discovery*, 2006 WL 3227767, at *12 (holding statements not misleading where plaintiffs fail to "identify any specific clinical standard" and the "EMEA clinical advice [was] not binding for the EMEA applicant"). 88 Fed. Reg. 12374 (Feb. 27, 2023).

sequitur, as their threadbare allegations are still far from meeting these "rigorous" requirements.

***No actual knowledge or recklessness pleaded.*** Plaintiffs do not allege the existence of any meetings, calls, or emails between the individual Defendants and Outlook's contract manufacturers related to any Forms 483, nor do they allege any particular communications from the FDA regarding the NORSE 1–3 trials. *See Hoey v. Insmed Inc.*, 2018 WL 902266, at *23 (D.N.J. Feb. 15, 2018) (no way "to infer what defendants knew or when" where there are no "details with respect to the dates on which the meetings took place, or the discussions, if any, which transpired"). Nor are there any allegations of motive (*e.g.*, no stock sales or financings) or corroborative witness statements. *See Sapir v. Averback*, 2016 WL 554581, at *10 (D.N.J. Feb. 10, 2016) (noting complaint "fails to cite a single document or witness that corroborates allegations of scienter"). And while Plaintiffs attach the Forms 483 to their Complaint, they do not allege when or how Trenary and Kenyon learned of them or whether they were public at the time the statements were made. *See Discovery*, 2006 WL 3227767, at *9 (explaining no Rule 10b-5 claim absent allegations "that defendants were actually aware of the FDA Form 483 and the warning letters").

Plaintiffs seize on two statements to allege Trenary's scienter, but read in context, these statements fail to support Plaintiffs' theories. *First*, Plaintiffs contend that Trenary's July 28, 2023 statement that Outlook had "work[ed] with [Fuji and Aji] on ***mock*** inspections" and "felt . . . like both of those companies had great capability" (¶ 175) somehow indicates that he "either reviewed the Form 483" or was "reckless in deciding to speak about cGMP compliance." (Opp. at 23.) But Trenary did not speak about any ***actual*** FDA inspections, and Plaintiffs do not allege ***when*** the mock inspections took place. And even assuming *arguendo* that the Complaint contained well-pled allegations that Outlook obtained the Forms 483 or that Trenary otherwise learned of the FDA's interim observations before he spoke on July 28, 2023 (it does not), that is still consistent

8

with an honest belief that the manufacturers were "in a position to do what needs to be done" to "get us to the finish line." (¶ 175.) *See Discovery*, 2006 WL 3227767, at *10 ("Plaintiffs have not alleged that anyone at Discovery was aware that [its contract manufacturer] lacked sufficient expertise to complete the remediation plan successfully. . . . We cannot fairly infer such knowledge from the subsequent failure of remediation."). *Second*, Plaintiffs cite to Trenary's September 13, 2021 statement that Outlook had consulted and worked with the FDA to "plan" the Phase 3 study design. (Opp. at 23 (citing ¶ 106).) But Trenary never suggested the FDA had given a final stamp of approval (Outlook warned it had not). (*See* Mot. at 22; *see also supra* Section II.)

Plaintiffs also argue that Trenary's statement on August 30, 2023, after the issuance of the CRL, that "it looked like there were . . . a couple of clarifications that [the] FDA was looking for on old items" (¶ 189), somehow confessed "Defendants' awareness" of the Forms 483 and "unresolved deficiencies" with the manufacturing partners. (Opp. at 25–26.) But read in context with Trenary's following statement that "everything they had in [the CRL] required either a ***clarification***, or some ***additional information*** from us" (¶ 189), it is clear that he was explaining that the FDA wanted more insight into topics that Outlook and the FDA had previously discussed. And, in that same interview, Trenary indicated that Outlook did not yet fully understand what specific information the FDA still needed, which cannot be reconciled with Plaintiffs' reading. (*See* Ex. 20 at 9 ("But we think that there's a potential that by curing some of the CMC issues, there's a pathway for providing that additional confirmatory evidence. If FDA, on the other hand, required some sort of additional clinical evidence we would need to understand what the nature of that was."); Mot. at 10.) Simply put, nothing in Trenary's statement implied that the FDA had previously informed Defendants that the NORSE 1–3 trial designs were inadequate or that Outlook had previously known of any manufacturing issues that could not be remediated.

Plaintiffs' scienter allegations as to Kenyon are even more scant. They claim he signed SEC filings that "misrepresented the existence of an agreement between Outlook and the FDA regarding the NORSE 1–3 trials and the Manufacturing Partners' cGMP compliance." (Opp. at 23), but the cited statements did nothing of the sort. (*See, e.g.*, ¶ 104 ("Accordingly, all three of these clinical trials required for our planned BLA submission in the first quarter of calendar 2022 for wet AMD have been completed."); ¶ 124 ("[O]ur current and future manufacturing partners will be subject to continual review and inspections to assess compliance with cGMP . . . .").

**Access to information.** Plaintiffs suggest that "Defendants' access to contemporaneous information contradicting their statements" is sufficient to meet the high pleading bar. (Opp. at 22.) But courts have squarely rejected this. *See In re Ocugen, Inc. Sec. Litig.*, 659 F. Supp. 3d 572, 588–89 (E.D. Pa. 2023), *aff'd*, 2024 WL 1209513 (3d Cir. Mar. 21, 2024) ("Pleading true facts generally requires that the plaintiff cite contemporaneous sources rather than rely on conjecture based on subsequent events."); *Hoey*, 2018 WL 902266, at *23 ("Nor can the Court infer that the [defendants] were aware of the alleged flaws of the trial, based on the allegation that they likely had access to the Day 120 Questions."). As noted above, the Complaint fails to plead the existence of information contradicting the challenged statements. *See supra* at Section II. And optimistic statements about the BLA and manufacturers' capabilities, made after the issuances of the Forms 483, are not enough to overcome the competing inference that Defendants still genuinely believed that they could achieve BLA approval with the help of their manufacturing partners. *Sapir*, 2016 WL 554581, at *11–13 (accepting "competing non-fraudulent inference" absent "showing that Defendants knew all along that the Phase 3 Studies were destined to fail").

**Management and core operations.** "Plaintiffs' attempt to impute knowledge to the Individual Defendants by virtue of their employment has been rejected as a basis for an inference

of scienter."[15] *Nat'l Junior Baseball League*, 720 F. Supp. 2d at 556; *see Chan v. New Oriental Educ. & Tech. Grp. Inc.*, 2019 WL 2865452, at *12 (D.N.J. July 3, 2019) (no inference of scienter because "[w]hen it comes to ascribing knowledge to management," plaintiffs "resort to 'must have knowns' for support"). And given that Plaintiffs have not identified any other particularized allegations of scienter, these factors alone—without "something more"—are insufficient to meet the high pleading standard.[16] *In re Elecs. for Imaging, Inc. Sec. Litig.*, 2019 WL 397981, at *9 (D.N.J. Jan. 31, 2019); *cf. Institutional Inv. Grp. v. Avaya, Inc.*, 564 F.3d 242, 268 (3d Cir. 2009) (allegations included witness statements, analyst report, and defendants' own admissions).

## IV.    PLAINTIFFS FAIL TO ADEQUATELY PLEAD LOSS CAUSATION.

Plaintiffs argue the "bad news" disclosed on May 1, 2022 and August 30, 2023 caused their losses. (Opp. at 27.) But as they acknowledge, the Supreme Court in *Dura Pharmaceuticals, Inc. v. Broudo* made clear that loss causation requires pleading "a causal connection between the material misrepresentation and the loss," 544 U.S. 336, 342 (2005), and this is not accomplished with mere "allegations of drops in stock price following an announcement of bad news that does not disclose the fraud," *In re Tellium, Inc. Sec. Litig.*, 2005 WL 2090254, at *4 (D.N.J. Aug. 26, 2005). Here, Plaintiffs fail to explain how the May 2022 or August 2023 disclosures of regulatory setbacks revealed any fraud. Indeed, the only "truth" they point to is in a subsequent interview where Trenary stated "it looked like there were . . . a couple of clarifications that [the] FDA was looking for on old items." (¶ 189; *see* Opp. at 27.) But, particularly read together with Trenary's

---

[15] None of the cases Plaintiffs cite to for this proposition contemplate information provided to a third-party manufacturer (as opposed to directly to a company), nor do they pertain to "interim feedback" in a Form 483. (Opp. at 22–23 (citing cases).)

[16] Plaintiffs' citation to 21 C.F.R. §211.180(f) is likewise unavailing absent any particularized facts about how and when Kenyon and Trenary supposedly came to learn of this information. (Opp. at 5); *see* 21 C.F.R. §211.180(f) (not defining "responsible officials" or specifying when "responsible officials" are to be "notified in writing of any investigations").

11

accompanying statement that "everything [the FDA] had in [the CRL] required either a *clarification*, or some ***additional information***" (¶ 189), nothing in that interview revealed that any prior statements were false. And the drop in stock price merely indicates the market reacted to the disappointing news of a CRL—not to the revelation of any fraud. *See, e.g., Payne v. DeLuca*, 433 F. Supp. 2d 547, 610 (W.D. Pa. 2006).

## V.    CONCLUSION

For these reasons, the Court should dismiss the Complaint with prejudice.

**COOLEY LLP**

By:    */s/ Caroline Pignatelli*

Caroline Pignatelli
(N.J. Attorney No. 026292007)

Sarah M. Lightdale (*pro hac vice*)
55 Hudson Yards
New York, New York 10001-2157
Phone:  (212) 479-6000
Fax:  (212) 479-6275
Email:  cpignatelli@cooley.com
        slightdale@cooley.com

Koji F. Fukumura (*pro hac vice*)
10265 Science Center Drive
San Diego, California 92121-1117
Phone:  (858) 550-6000
Fax:  (858) 550-6420
Email:  kfukumura@cooley.com

*Attorneys for Defendants Outlook Therapeutics, Inc., C. Russell Trenary III, and Lawrence A. Kenyon*

13

**CERTIFICATE OF SERVICE**

I, Caroline Pignatelli, hereby certify that on September 10, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

/s/ Caroline Pignatelli
Caroline Pignatelli

14