Caroline Pignatelli
Sarah M. Lightdale (*pro hac vice*)
Cooley LLP
55 Hudson Yards
New York, New York 10001-2157
Phone: (212) 479-6000
Fax: (212) 479-6275
Email: cpignatelli@cooley.com
     slightdale@cooley.com

Janelle M. Fernandes (*pro hac vice*)
Cooley LLP
1144 15th Street, Suite 2300
Denver, Colorado 80202
Phone: (720) 566-4000
Fax: (720) 566-4099
Email: jfernandes@cooley.com

Koji F. Fukumura (*pro hac vice*)
Craig TenBroeck (*pro hac vice forthcoming*)
Amanda Jereige (*pro hac vice*)
Cooley LLP
10265 Science Center Drive
San Diego, California 92121-1117
Phone: (858) 550-6000
Fax: (858) 550-6420
Email: kfukumura@cooley.com
    ctenbroeck@cooley.com
    ajereige@cooley.com

*Attorney for Defendants Outlook Therapeutics, Inc.,*
*Russell Trenary III, and Lawrence A. Kenyon*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE OUTLOOK THERAPEUTICS, INC. SECURITIES LITIGATION | Case No. 2:23-cv-21862-MCA-CLW |
| | <u>CLASS ACTION</u> |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT** |
| | Judge: Hon. Madeline C. Arleo |
| | Ctrm: MLK 4A |
| | **ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................... 1

I.    PLAINTIFFS FAIL TO PLEAD FALSITY OR SCIENTER IN CONNECTION
      WITH DEFENDANTS' STATEMENTS ABOUT THE FDA. ....................................... 1

II.   PLAINTIFFS FAIL TO PLEAD FALSITY OR SCIENTER IN CONNECTION
      WITH DEFENDANTS' STATEMENTS ABOUT OUTLOOK'S CONTRACT
      MANUFACTURERS. ................................................................................................ 4

III.  PLAINTIFFS FAIL TO PLEAD FALSITY OR SCIENTER IN CONNECTION
      WITH DEFENDANTS' STATEMENTS ABOUT OTHER WET AMD TRIALS. ...... 10

IV.   THE DISCLOSURES RELIED ON TO ESTABLISH LOSS CAUSATION DID
      NOT REVEAL THE "TRUTH" ABOUT DEFENDANTS' ALLEGED FRAUD......... 11

V.    CONCLUSION..................................................................................................... 12

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aramic LLC v. Revance Therapeutics, Inc.*,
  2024 WL 1354503 (N.D. Cal. Apr. 2, 2024) ..........................................................9

*In re Checkpoint Therapeutics Sec. Litig.*,
  2025 WL 1434400 (S.D.N.Y. May 19, 2025) ...........................................5, 7, 8, 10

*City of Edinburgh Council v. Pfizer, Inc.*,
  754 F.3d 159 (3d Cir. 2014).................................................................................3

*City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*,
  70 F.4th 668 (3d Cir. 2023) .................................................................................7

*In re Digit. Island Sec. Litig.*,
  357 F.3d 322 (3d Cir. 2004)..................................................................................3

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005)...........................................................................................11

*Flannery v. SEC*,
  810 F.3d 1 (1st Cir. 2015)....................................................................................10

*Fort Worth Emps.' Ret. Fund v. Biovail Corp.*,
  615 F. Supp. 2d 218 (S.D.N.Y. 2009)..................................................................11

*In re Heartland Payment Sys., Inc. Sec. Litig.*,
  2009 WL 4798148 (D.N.J. Dec. 7, 2009)...............................................................8

*Hills v. BioXcel Therapeutics, Inc.*,
  2024 WL 3374145 (D. Conn. July 11, 2024) .....................................................9, 10

*Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*,
  620 F. Supp. 3d 167 (D.N.J. 2022) .......................................................................2

*Kader v. Sarepta Therapeutics, Inc.*,
  887 F.3d 48 (1st Cir. 2018)...................................................................................3

*In re Keryx Biopharmaceuticals, Inc. Sec. Litig.*,
  2014 WL 585658 (S.D.N.Y. Feb. 14, 2014)............................................................2

*Leder v. Shinfeld*,
  2008 WL 2165097 (E.D. Pa. May 22, 2008) ..........................................................3

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re MannKind Sec. Actions*,
   835 F. Supp. 2d 797 (C.D. Cal. 2011) ...................................................................2

*Monroe Cnty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*,
   15 F. Supp. 3d 336 (S.D.N.Y. 2014)....................................................................11

*Najjar v. Salameh*,
   2025 WL 1639891 (D.N.J. June 10, 2025) ............................................................1

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) .................................................................................4

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015)........................................................................................6, 7, 8

*Salzman v. ImmunityBio, Inc.*,
   753 F. Supp. 3d 1050 (S.D. Cal. 2024).........................................................5, 6, 10

*In re Sanofi Sec. Litig.*,
   87 F. Supp. 3d 510 (S.D.N.Y. 2015)......................................................................4

*Schaeffer v. Nabriva Therapeutics plc*,
   2020 WL 7701463 (S.D.N.Y. Apr. 28, 2020 ......................................................5, 9

*In re Tellium, Inc. Sec. Litig.*,
   2005 WL 2090254 (D.N.J. Aug. 26, 2005) ..........................................................11

*Trs. of Welfare & Pension Funds of Loc. 464A - Pension Fund v. Medtronic PLC*,
   726 F. Supp. 3d 938 (D. Minn. 2024)...................................................................10

*In re Y-mAbs Therapeutics, Inc. Sec. Litig.*,
   2024 WL 451691 (S.D.N.Y. Feb. 5, 2024).............................................................2

iii

**INTRODUCTION**

Plaintiffs argue that Defendants (i) claimed to have an agreement with the FDA when they did not, (ii) assured investors that their manufacturers were cGMP-compliant when they were not, and (iii) misleadingly compared the ONS-5010 trials to clinical trials that were not "comparable." But the only way Plaintiffs can make these arguments is by rewriting Defendants' statements and speculating about what the FDA *might have* done and what Defendants *might have* known. Such allegations do not satisfy the heightened pleading requirements of the PSLRA. Because Plaintiffs still have not adequately alleged an actionable misstatement or omission, a "strong inference" of scienter, or loss causation, the Court should dismiss the SAC—this time, with prejudice.

**I.   PLAINTIFFS FAIL TO PLEAD FALSITY OR SCIENTER IN CONNECTION WITH DEFENDANTS' STATEMENTS ABOUT THE FDA.**

Plaintiffs' first theory is that Defendants claimed to have an agreement with the FDA concerning the "approval" of their drug when they did not. (Opp. 17–18.)[1] This argument fails for at least three reasons: (1) Plaintiffs mischaracterize Defendants' statements; (2) Defendants' actual statements were not misleading; and (3) no facts suggest an intent to defraud.

Defendants never said Outlook had an "agreement" with the FDA that its trials would suffice "for approval." (Opp. 17.) What Defendants said was that Outlook's clinical trial plan "was put together between the company and the FDA" (¶ 126); NORSE 1 and 2 were designed "in consultation with FDA" (¶ 135); and in meeting the primary and key secondary endpoints in

---

[1] Plaintiffs' Opposition to Defendants' Motion (ECF No. 71 ("Opp.")) includes a timeline attached as Exhibit A. The Court should decline to consider this exhibit as it is not judicially noticeable and misstates the allegations in the SAC (*e.g.*, stating that "Trenary admitted there remained a couple of 'old issues' related to cGMP" when Defendant Trenary is not alleged to have ever used the phrase "old issues" in the SAC). By contrast, the six contested exhibits attached to Defendants' Motion to Dismiss—Exs. 2, 8, 17, 18, 20, 22 (FDA publications, a page from the Company's public website, and Company press releases)—are properly subject to judicial notice. (Mot. 3 n.2); *see also Najjar v. Salameh*, 2025 WL 1639891, at *4 (D.N.J. June 10, 2025).

1

NORSE 2, Outlook "achieved the requirements agreed upon with the FDA" necessary for "*submission of our BLA*" (¶ 124). Plaintiffs do not dispute that Outlook consulted with the FDA or that the FDA accepted the BLA's *submission*. Plaintiffs have thus alleged no misrepresentation.[2]

Plaintiffs ignored the Court's instructions for alleging falsity under this theory: "[Y]ou have to say either [Defendants] didn't discuss the trials" with the FDA or "that the FDA told them . . . your trial is too small." (Ex. 19 at 49:6–10.) Plaintiffs do not allege facts to suggest that Defendants fabricated discussions with the FDA or that the FDA expressed concern over the size of the trials. Plaintiffs merely speculate—based on subsequent draft guidance and the CRL—that the FDA *would have* told Outlook its trial plan was insufficient. (Opp. 17–19.) Speculation is not enough under the PSLRA. Even in the cases Plaintiffs cite, stockholders were able to point to specific statements by the FDA that were inconsistent with Defendants' public statements or to a company's implicit admissions that its prior statements were incorrect.[3] Not here. Plaintiffs do not even dispute that the trial design details and FDA guidance were publicly disclosed. (Opp. 18–19.) At bottom, Plaintiffs simply disagree with Outlook's trial design. But the securities laws are not a "tool to second guess how clinical trials are designed and managed." *In re Keryx Biopharmaceuticals, Inc. Sec. Litig.*, 2014 WL 585658, at *1 (S.D.N.Y. Feb. 14, 2014).

The Opposition also does nothing to establish the requisite "strong inference" of scienter

---

[2] Plaintiffs' own case law illustrates that, if the FDA believed Outlook's clinical trials to be facially deficient, the FDA could have issued a Refusal to File ("RTF") letter. *See In re Y-mAbs Therapeutics, Inc. Sec. Litig.*, 2024 WL 451691, at *2 (S.D.N.Y. Feb. 5, 2024) (after BLA submission, FDA issued RTF letter "indicating that the Y-mAbs BLA did not contain substantial evidence consisting of adequate and well-controlled investigations").

[3] *See Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, 620 F. Supp. 3d 167, 186 (D.N.J. 2022) (alleging FDA's specific statements of concern in a specific meeting); *Y-mAbs*, 2024 WL 451691, at *2 (alleging specific statements by FDA about inadequacy of proposed study); *In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 809, 823 (C.D. Cal. 2011) (defendants stated FDA had "blessed, vetted, approved, accepted, and agreed to" methodology, but later downplayed the FDA's prior communications as mere "advice").

as to any FDA-related statement. As noted above, Plaintiffs' theory depends on a tortured reading that rewrites statements about *submission* of the BLA into statements about *approval* of the drug. Since Defendants never claimed to have reached an agreement with the FDA about "approval," Defendants' knowledge that they did not have such an agreement is irrelevant. (*See* Opp. 23.)

Moreover, several facts cut *against* an inference of scienter. CW6, for example, is alleged to have been the "Executive Director of Payer Market Access at Outlook from February 2023 to December 2023." (¶ 165; *see also* Opp. 25.) That Outlook hired someone in early 2023 whose sole role was market access (*i.e.*, securing access for patients and payers to the product) supports the inference that Defendants believed FDA approval was realistic. And yet, the Company still cautioned investors that approval was "not guaranteed," the FDA had "substantial discretion in the approval process," and the FDA "could delay, limit, or deny approval of a product candidate for many reasons," including changing "approval policies or . . . new regulations" or disagreeing over the "number, design, [and] size of Outlook's clinical trials." (Mot 7, 14.) Plaintiffs do not address these warnings in the Opposition, but they "erode[] inferences of scienter." *Kader v. Sarepta Therapeutics, Inc.*, 887 F.3d 48, 58 (1st Cir. 2018). The Opposition also does not claim that Defendants had anything to gain from the alleged fraud. This, too, counts against scienter because "fraud without motive 'makes little economic sense.'" *Leder v. Shinfeld*, 2008 WL 2165097, at *6 (E.D. Pa. May 22, 2008) (quoting *In re Digit. Island Sec. Litig.*, 357 F.3d 322, 331 (3d Cir. 2004)).

Plaintiffs want the Court to infer that Defendants promised FDA approval for a drug they knew would not be approved and that they spent millions of dollars on clinical trials that they knew were deficient, for no personal gain. Such allegations are hard to credit. *See City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 170 (3d Cir. 2014) (affirming dismissal because "the initiation of Phase 3 cost millions of dollars and required FDA approval, rendering it improbable

that defendants would have continued if they did not believe their interpretation of the interim results or if they thought the drug a complete failure").[4] The more compelling inference is the innocent one—that is, Defendants believed their BLA would be accepted but nonetheless cautioned investors that FDA approval is never a sure thing.

## II. PLAINTIFFS FAIL TO PLEAD FALSITY OR SCIENTER IN CONNECTION WITH DEFENDANTS' STATEMENTS ABOUT OUTLOOK'S CONTRACT MANUFACTURERS.

Plaintiffs' second theory is that Outlook "assured investors" that its contract manufacturers were "cGMP compliant" when they were not. (Opp. 11, 22.) They ask the Court to infer that Defendants had contemporaneous knowledge of certain Forms 483 issued to third parties by the FDA, which supposedly contradicted Defendants' public statements. (*Id*. at 12–15.) Plaintiffs again fail to allege falsity or scienter.

Contrary to Plaintiffs' assertion, Defendants never made assurances of cGMP compliance. Defendants' statements about cGMP were aspirational. (S*ee* ¶ 133 ("We are working with [Fuji and Aji] to provide product manufacturing in current Good Manufacturing Practices, or cGMP, manufacturing facilities.").) They expressed confidence in Aji and Fuji's "experience[]," and a belief that "their CMC capabilities [are] outstanding." (¶ 156.) They used terms like "world class" and "best-in-class cGMP" (Opp. 15 (citing ¶¶ 96–97, 103))—statements that the Court has already identified as non-actionable opinions or puffery. (Ex. 19 at 7:11–13 ("I'm not sure those kind of opinions, optimistic statements early on are enough to be a misstatement of fact."); *id*. at 13:14–15 ("None of these are doing it for me. These are optimistic, puffery. They're just not false

---

[4] *See also Nguyen v. Endologix, Inc.*, 962 F.3d 405, 416 (9th Cir. 2020) ("It is improbable that [a company] would stake its existence on a drug and a clinical trial that the company thought was doomed to failure."); *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 531 (S.D.N.Y. 2015) (finding it "implausible and conjectural" that drug company would continue to fund clinical trials "while secretly believing that FDA approval was unlikely").

4

statements.").) No reasonable investor would have construed these statements as assurances that Aji or Fuji had never received FDA inspectional observations.

The SAC does not contain any non-conclusory allegations that Defendants knew of any Form 483 when the challenged statements were made, so any claim based on the non-disclosure of those Form 483s "necessarily f[l]ounders." *In re Checkpoint Therapeutics Sec. Litig.*, 2025 WL 1434400, at \*16 (S.D.N.Y. May 19, 2025). Plaintiffs vaguely allege that "drug sponsors" routinely audited Aji's facility (¶ 113); that Aji provided "updates" of FDA inspections and notices of Forms 483 to "drug sponsors" (¶¶ 114–117); and that Fuji likewise informed "drug sponsors" of "quality issues" (¶ 120). None of the allegations reflect, however, that Defendants were aware of any Forms 483. The SAC does not even allege that the Forms 483 attached to the SAC involved Outlook's drug candidate. The SAC's only allegation of information relayed to Outlook is a statement from CW5 about a "failed batch" of ONS-5010 prior to September 2019—*two years* before the Class Period began. (¶¶ 121–122.) That allegation does not come close to establishing an inference that, when the Defendants spoke positively about Outlook's manufacturers on any given date during the Class Period, Defendants were knowingly or recklessly misleading the market.

Plaintiffs rely on *Salzman v. ImmunityBio, Inc.*, 753 F. Supp. 3d 1050 (S.D. Cal. 2024), for the proposition that statements "tout[ing]" cGMP compliance create a duty to disclose Forms 483. (Opp. 13.)[5] *Salzman* does not help Plaintiffs. In *Salzman*, a drug company's top brass was "well-informed" as to its contract manufacturer's deficiencies, learning through a "quality agreement"

---

[5] The Opposition does not dispute that companies have no standalone duty to disclose a Form 483. *See Checkpoint*, 2025 WL 1434400, at \*17 (citing cases). The non-disclosure of a Form 483 will be actionable only if the disclosure was necessary to render other statements not misleading. *Schaeffer v. Nabriva Therapeutics plc*, 2020 WL 7701463, at \*9 (S.D.N.Y. Apr. 28, 2020).

with the manufacturer that FDA inspectors had observed numerous cGMP failures. *Salzman*, 753 F. Supp. 3d at 1067. The defendants "actively worked to fix those issues," "even hiring costly contract workers to supplement the [manufacturer's] existing workforce," and commissioned a mock inspection "where their own representatives identified numerous issues, including a host of unresolved issues previously identified in the Forms 483." *Id.* The CEO even met monthly with the manufacturer's executives to discuss manufacturing deficiencies. *Id.* at 1056–57. Given the defendants' intimate knowledge of persistent manufacturing issues, the court found it misleading for the drug company to claim that it had "established" GMP manufacturing capacity at scale and contracted with a manufacturer with "multiple cGMP-compliant facilities." *Id.* at 1062.

None of the *Salzman* facts are present here. Defendants are not alleged to have known about any particular manufacturing facility deficiencies, much less attempted to remediate them. Nor did Outlook ever claim to have "established" GMP manufacturing capacity "at scale" or proclaim its manufacturers to be "cGMP-compliant." Defendants' statements were softer—*e.g.*, that Outlook was "working with" its manufacturers to "provide product manufacturing in current Good Manufacturing Practices, or cGMP, manufacturing facilities." (¶ 133).

At the hearing in February 2025, the Court expressed unease about Defendant Trenary's statements on July 28, 2023.[6] (Ex. 19 at 21:6–21.) The Court should not have any heartburn about those remarks, which the Opposition does not seriously dispute were Trenary's opinions. *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 183 (2015) (an opinion expresses a "belief," a "view," or a "sentiment"). *Omnicare* identified just three

---

[6] Defendant Trenary stated: "We have found their CMC capabilities to be outstanding . . . . We went through both of their factories several times . . . and just felt all along like both of those companies had great capability to not only run a clean shop but be in a position to do what needs to be done to get through FDA inspections in really good shape. So we're confident in those folks and believe that they've got all the capabilities required to get us to the finish line." (¶ 156.)

6

scenarios in which an opinion may be false or misleading: it (i) is insincere; (2) contains an expressly embedded fact that is untrue; and (3) reasonably implies untrue facts and omits a qualifying statement about them. *Id.* at 184–89. None of these scenarios is alleged in the SAC.[7]

The Opposition first suggests Trenary's statements were "not genuinely believed" (prong 1). (Opp. 15.) But that is not a *fact*; it is an inference Plaintiffs seek to draw from the Forms 483. (Opp. 15.) That is too thin a reed on which to hang a securities fraud claim. Plaintiffs also do not dispute that a Form 483 is not a final determination of cGMP non-compliance. (Mot. 19–20). Therefore, even if Trenary had known of the Form 483 at the time of the July 2023 statements— and the SAC does not allege this—the shortcomings reflected in the Forms 483 could reasonably have seemed to him to be "eminently correctable." *Checkpoint*, 2025 WL 1434400, at *17.[8]

The Opposition also flirts with prong 2, arguing Trenary "embedded a false statement of fact—adherence to an objective, verifiable set of standards, to which the Manufacturing Facilities did not actually adhere." (Opp. 15.) But prong 2 refers to "expressly" embedded factual assertions. *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 686 (3d Cir. 2023).[9] Trenary only supplied one supporting fact in his statement: "[Outlook] went through both [manufacturers'] factories several times." (¶ 156.) The truthfulness of that statement is undisputed.

Plaintiffs lastly argue (under prong 3) that "the omission of the Forms 483 and the prior manufacturing failure for ONS-5010 at [Fuji] undermined and rendered misleading positive

---

[7] Although the allegations in the SAC are based solely on prong 3 (¶ 157), the Opposition tries to argue all three prongs (Opp. 14–16).

[8] The precisely on-point *Checkpoint* opinion was issued on May 19, 2025, a week before Plaintiffs filed their Opposition. Yet the Opposition does not even cite it. This omission is telling.

[9] The Supreme Court in *Omnicare* provided the following example: "I believe our TVs have the highest resolution available because we use a patented technology to which our competitors do not have access." 575 U.S. at 185. That statement could be read to affirm not only the speaker's state of mind, but also an underlying fact: that the company uses a patented technology. *Id.*

7

characterizations about the Manufacturing Facilities." (Opp. 15–16.) This misses *Omnicare*'s key lesson: an opinion "is not necessarily misleading when an issuer . . . fails to disclose . . . some fact cutting the other way." 575 U.S. at 189. To allege that an opinion was false by omission, a plaintiff must identify "particular (and material) facts going to the basis for the issuer's opinion—facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have" whose omission renders the statement at issue misleading. *Id*. at 194. Plaintiffs offer no specifics about what informed Defendants' opinions, only "conclusory assertions" about what they think Outlook knew. Even if Outlook observed something out of place during its visits—and no allegation suggests that to be the case—that, by itself, would not render those opinions misleading. *See id*. at 189–90 ("Reasonable investors understand that opinions sometimes rest on a weighing of competing facts."); *see also Checkpoint*, 2025 WL 1434400, at *17 (positive opinions on FDA approval prospects not misleading simply because contract manufacturer had received Forms 483).

For much the same reasons, the Opposition also does nothing to establish the requisite "strong inference" of scienter as to any manufacturing-related statement. The Opposition employs a variety of headers to repackage the same argument over and over. It refers to the Company's "core operations," points to Trenary's "hands on" management style, and says that Defendants "held themselves out as knowledgeable" about manufacturing facilities. (Opp. 21–29.) Taken together, Plaintiffs argue these facts create the inference that Defendants must have known about the Form 483s. (Opp. 22.) Even if that were correct—it is not[10]—the key question for scienter purposes is not whether Defendants had knowledge of the Forms 483, but rather whether the

---

[10] *See In re Heartland Payment Sys., Inc. Sec. Litig.*, 2009 WL 4798148, at *7 (D.N.J. Dec. 7, 2009) ("[I]t is not automatically assumed that a corporate officer is familiar with certain facts just because these facts are important to the company's business; there must be other, individualized allegations that further suggest that the officer had knowledge of the fact in question.").

8

Defendants knew that their failure to disclose the Forms 483 rendered their *statements* misleading. "Plaintiff[s] need[] to plead something more to indicate why Defendants' failure to mention the Form 483 was highly unreasonable." *See Schaeffer*, 2020 WL 7701463, at *12.

When there is nothing "more," courts dismiss complaints on scienter grounds even after concluding that plaintiffs adequately alleged falsity. Plaintiffs cite to *Hills v. BioXcel Therapeutics, Inc.*, arguing that "[b]y discussing cGMP and other manufacturing issues 'relating to the Form 483, they had an obligation to provide complete information in a manner that was not misleading.'" (Opp. 11–12 (quoting 2024 WL 3374145, at *12 (D. Conn. July 11, 2024)).) But the court in *BioXcel* went on to hold that "[e]ven if, in hindsight, two of Defendants' statements [about the clinical trial being 'on track' and 'progressing well'] were misleading by omission due to the failure to disclose the Form 483, this alone does not support an inference that they were intentionally or recklessly so," particularly given that the statements were "not necessarily consistent with an inference that [the defendants] were deliberately hiding the Form 483." 2024 WL 3374145, at *19; *see Aramic LLC v. Revance Therapeutics, Inc.*, 2024 WL 1354503, at *14 (N.D. Cal. Apr. 2, 2024) (finding no scienter where "[e]ven if Defendants' projections or statements of confidence were overly optimistic, Plaintiffs have not alleged facts showing that Defendants believed that the manufacturing issues could not be resolved quickly or that the FDA would not approve the BLA").

Here, even Defendants' awareness of the Forms 483 does "not demonstrate recklessness." *BioXcel*, 2024 WL 3374145, at *19. Plaintiffs' CW allegations "are quite vague and conclusory, and generally untethered from the Individual Defendants and the statements at issue." *Id*. at *20. Outlook's statements were not inconsistent with its manufacturers' receipt of Forms 483. And, Outlook also disclosed to investors that its "third-party manufacturers may not be able to comply

9

with cGMP." (Ex. 10 at 40–41; Ex. 14 at 42–43.) The fact that Defendants "intentionally put the public on notice" of the risk of noncompliance "strongly negates an inference that [Defendants] were acting recklessly or consciously" in not disclosing any Form 483. *BioXcel*, 2024 WL 3374145, at *19.[11]

Finally, the fraud scheme that the SAC envisions within Outlook—to conceal the fact that the Forms 483 presented an insurmountable obstacle shortly before the PDUFA date—"is not coherent." *Checkpoint*, 2025 WL 1434400, at *24. On this theory, Defendants would have known the fraud would be revealed in short order. The inference is far more plausible that Defendants did not know about the Forms 483, did not think they were material, or simply did not believe that failing to disclose the Forms 483 rendered anything that they said misleading. *See Flannery v. SEC*, 810 F.3d 1, 9 (1st Cir. 2015) ("If it is questionable whether a fact is material or its materiality is marginal, that tends to undercut the argument that defendants acted with the requisite intent or extreme recklessness in not disclosing the fact." ).[12]

### III. PLAINTIFFS FAIL TO PLEAD FALSITY OR SCIENTER IN CONNECTION WITH DEFENDANTS' STATEMENTS ABOUT OTHER WET AMD TRIALS.

The Opposition barely defends the allegation that Defendants made false comparisons between NORSE 1 & 2 and other wet AMD trials. (Opp. 20.) For good reason. Defendants never

---

[11] Plaintiffs argue that Defendants' risk warnings were themselves misleading because the warned-of risk had already materialized. (Opp. 16.) But again, the SAC does not plead a factual basis for its key inference: that Defendants knew of the Forms 483 beforehand, which distinguishes this case from *Salzman*. Moreover, the mere receipt of a Form 483, which is not a final determination of non-compliance, does not itself constitute a materialized risk. *See Trs. of Welfare & Pension Funds of Loc. 464A - Pension Fund v. Medtronic PLC*, 726 F. Supp. 3d 938, 964, 974–75 (D. Minn. 2024); *Checkpoint*, 2025 WL 1434400, at *6, *19 (rejecting argument that risk warnings about cGMP compliance were actionable based on manufacturer's receipt of Forms 483).

[12] Plaintiffs argue that Defendants' allegedly "evasive answers" to questions about trial design, cGMP compliance, and the CRL are indicative of scienter. (Opp. 28.) But scienter cannot be inferred simply because Plaintiff was unsatisfied with Trenary's honest explanation of communications with the FDA or that he had not been given full details about the FDA's reasoning. Plaintiff has not alleged anything showing this to be untrue.

said what Plaintiffs allege—*i.e.*, that the NORSE 1 & 2 trials were "comparable" *in size* to those studies. (Opp. 20 (citing ¶ 135 ("the results of it were very similar . . . pertaining to bevacizumab results"), ¶ 137 ("we did monthly injections of bevacizumab, which is comparable to what all other companies did").) No reasonable investor would have understood these statements to be about the size of the trials, which was public information.

## IV.    THE DISCLOSURES RELIED ON TO ESTABLISH LOSS CAUSATION DID NOT REVEAL THE "TRUTH" ABOUT DEFENDANTS' ALLEGED FRAUD.

Adequately pleading loss causation requires more than a declaration that the "truth" emerged, and investors lost money. (Opp. 29–30; *see also* ¶¶ 158–162.) A plaintiff must plausibly articulate *how* the "concealed scheme" was disclosed to the market. *In re Tellium, Inc. Sec. Litig.*, 2005 WL 2090254, at *3 (D.N.J. Aug. 26, 2005). Otherwise, the court cannot assess whether "the defendant's *misrepresentation* (or other fraudulent conduct) proximately caused the plaintiff's economic loss," *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005), or whether investors just reacted to "bad news," *Tellium*, 2005 WL 2090254, at *4; *see also Fort Worth Emps.' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 229 (S.D.N.Y. 2009) (rejecting loss causation allegations where the "all-but-inevitable" stock price decline appeared caused by FDA's "failure to approve the drug—not by any 'corrective' disclosure of some prior untruth"). In both the SAC and Opposition, Plaintiffs fail to explain how any disclosure was "corrective" or revealed a previously concealed risk—they just declare it to be so. (Opp. 29–30.)[13] Accepting their threadbare allegations as sufficient would eviscerate loss causation as an element of securities fraud.

---

[13] Plaintiffs do not dispute that Outlook *disclosed* the risk of the FDA's non-approval, including the possibility that the FDA would identify deficiencies in the manufacturing processes or facilities of its third-party manufacturers. (Mot. 7–8.) The "materialization of a known risk, rather than the disclosure of a concealed one," is not a plausible theory of loss causation. *Monroe Cnty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 357–58 (S.D.N.Y. 2014).

11

## V.    CONCLUSION

For these reasons, the Court should dismiss the SAC with prejudice.

Dated: June 16, 2025

**COOLEY LLP**

By: */s/ Caroline Pignatelli*
Caroline Pignatelli
(N.J. Attorney No. 026292007)

Sarah M. Lightdale (*pro hac vice*)
55 Hudson Yards
New York, New York 10001-2157
Phone: (212) 479-6000
Fax: (212) 479-6275
Email: cpignatelli@cooley.com
slightdale@cooley.com

Koji F. Fukumura (*pro hac vice*)
Craig TenBroeck (*pro hac vice forthcoming*)
Amanda Jereige (*pro hac vice*)
Cooley LLP
10265 Science Center Drive
San Diego, California 92121-1117
Phone: (858) 550-6000
Fax: (858) 550-6420
Email: kfukumura@cooley.com
ctenbroeck@cooley.com
ajereige@cooley.com

Janelle M. Fernandes (*pro hac vice*)
Cooley LLP
1144 15th Street, Suite 2300
Denver, Colorado 80202
Phone: (720) 566-4000
Fax: (720) 566-4099
Email: jfernandes@cooley.com

*Attorneys for Defendants Outlook Therapeutics, Inc., Russell Trenary III, and Lawrence A. Kenyon*

**CERTIFICATE OF SERVICE**

I, Caroline Pignatelli, hereby certify that on June 16, 2025, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Caroline Pignatelli*
Caroline Pignatelli